IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : : Plaintiff, : : v. : : ERIC P. LESAK, : GLOBAL RESEARCH, LLC (PA), : GLOBAL RESEARCH, LLC (NY), : : Defendants. : | Case No. 1:18-cv-1951 COMPLAINT (SECURITIES) |

Plaintiff Securities and Exchange Commission ("SEC") alleges as follows against Eric P. Lesak, Global Research, LLC (PA), and Global Research, LLC (NY) ("collectively, "Defendants"):

## I.  SUMMARY

1.      Between December 2015 and June 2017, Eric P. Lesak – a twice convicted securities fraudster – acted through Global Research, LLC (PA) and Global Research, LLC (NY) (collectively, "Global") and on his own to defraud investors into purchasing the common stock of a penny-stock company called Axiom Holdings, Inc. ("Axiom").

2.      Lesak and Global were paid hundreds of thousands of dollars to promote Axiom stock to prospective investors by a stock promotion company (the "Funding Entity") that was operated by two individuals with criminal convictions for securities fraud.

3.      Lesak knew from one of the convicted fraudsters running the Funding Entity that Axiom wanted "traffic" in its stock and to increase the number of Axiom's shareholders.  In other words, Lesak knew that Axiom wanted investors actively buying its stock.

1

4.     To help create "traffic" in Axiom stock and the appearance of a market for its securities, Lesak personally bought and sold thousands of shares of Axiom stock in transactions that made little economic sense and resulted in losses for Lesak.

5.     In addition, Lesak and Global purchased "sales leads" of prospective investors for Lesak and Global employees to cold-call and recommend purchasing Axiom stock.

6.     From these sales leads, Lesak and Global pitched Axiom stock to more than 100 investors who bought Axiom stock between December 15, 2015 and June 20, 2017. These investors purchased more than 1.9 million shares of stock for approximately $2.8 million, which led to losses of more than $2.3 million by the time trading in Axiom was suspended by the Commission in June 2017.

7.     Global's website falsely claimed that Global's "research team searches through thousands of stocks and investment opportunities, then we present you with the select few we predict to be the most profitable."

8.     Before March 6, 2017, neither Lesak nor anyone at Global told prospective investors that they were being paid thousands of dollars each month – in many instances, tens of thousands of dollars – to promote Axiom stock to investors.

9.     Reasonable investors would consider it important to their decision to buy Axiom stock based on Lesak's and Global's recommendation that they were being paid tens of thousands of dollars to promote Axiom to investors. Actual investors contacted by the SEC have said that they did not know about this compensation and that it would have been important to their decision to buy Axiom stock based on Lesak's and Global's recommendation.

10.    While Lesak and Global touted decades of experience providing financial advice, neither disclosed to prospective investors that Lesak is a twice-convicted fraudster who pled guilty to securities fraud and conspiracy to commit securities fraud, *United States v. Lesak*,

1:07:CR-00396-LAK-DCF-1, Judgment of Conviction (S.D.N.Y Dec. 19, 2013 (Dkt. 47)), as well as to wire fraud related to securities transactions, *United States v. Lesak*, 1:06-CR-00408-LAK-1, Judgment of Conviction (S.D.N.Y Dec. 19, 2013 (Dkt. 20)).

11. Reasonable investors would consider Lesak's fraud convictions important to their decision to buy Axiom stock based on Lesak's recommendation. Actual investors contacted by the SEC have said that they were not told about Lesak's convictions and that it would have been important to their decision to buy Axiom stock given that it was Lesak (and his company) who recommended the stock to them.

12. As a result of the conduct alleged in this Complaint, Lesak and Global violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and SEC Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Lesak also violated Section 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)].

## II. JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

14. Venue in this District is proper pursuant to 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b)(2) because acts or transactions constituting federal securities laws violations occurred within this jurisdiction, including communications with at least one investor from this jurisdiction who purchased Axiom stock after communicating with Defendants.

15. As described below, Defendants directly or indirectly made use of the mails and of the means and instrumentalities of interstate commerce in furtherance of the acts, practices, and courses of business described in this Complaint.

## III.   DEFENDANTS

16.   **Eric P. Lesak**, age 47, is a resident of Wantagh, New York, who has identified himself as either the CEO or Managing Director of Global Research, LLC.  Beginning in 1993, Lesak worked as a stockbroker at several registered broker-dealers, including Stratton Oakmont, Inc.  In 2001, the NASD barred Lesak from association with any NASD member based on its finding that he effected unauthorized transactions in a corporate customer's account without the knowledge, authorization, or consent of the customer, and failed to respond to NASD requests to appear for an on-the-record interview.  In 2005, the NASD suspended his registration because he failed to comply with an arbitration award.  On December 19, 2013, the United States District Court for the Southern District of New York entered judgments of conviction against Lesak in two criminal cases.  *United States v. Eric Lesak*, 1:06-CR-408-01 (adjudicating Lesak guilty of four counts of wire fraud related to securities transactions based on his guilty plea); *United States v. Eric Lesak*, 1:07:CR-396-01 (LAK) (Judgment of Conviction, Dec. 19, 2013) (adjudicating Lesak guilty of conspiracy to commit securities fraud and two counts of securities fraud, based on his guilty plea, and ordering him to forfeit roughly $8.5 million).  Lesak's convictions provided for supervised release from December 11, 2013 through December 10, 2015.

17.   **Global Research, LLC (PA)**[1] is a limited liability company that Lesak, with the help of one of the convicted fraudsters running the Funding Entity, caused to be organized in Pennsylvania on November 23, 2015.  Its business address was 25 Jonathans Way, Henryville, PA 18332, and its Tax Identification Number was XX-XXX0540.  According to bank records, Lesak's wife, Tara Lesak, is listed as owner of Global Research, LLC (PA), but, at all relevant times, Eric Lesak directed or controlled the entity's business activities.

---

[1]   The "(PA)" and the "(NY)" are not part of the companies' names but were added by the SEC to differentiate between two identically named entities that were registered in different states.

18. **Global Research, LLC** (**NY**) is a limited liability company that Lesak caused to be re-organized in New York on August 18, 2016, with a business address of 3494 Clifton Boulevard, Wantagh, NY 11793, using the same Tax Identification Number as was used when Global Research, LLC first organized in Pennsylvania (XX-XXX0540). According to organizing documents, Tara Lesak is listed as owner of Global Research, LLC (NY) but, at all relevant times, Eric Lesak directed or controlled the entity's business activities.

### IV.   RELEVANT ENTITY

19. **Axiom Holdings Inc.** was incorporated in Nevada and, between October 2015 and October 2016, had principal executive offices in Orlando, Florida, after which they were located in Kowloon, Hong Kong. Axiom's Florida offices were located at the residence of a recidivist fraudster who owned more than sixteen million shares of Axiom through at least one of his companies. In a quarterly report filed with the SEC on May 19, 2016, Axiom reported assets of $2,500 as of March 31, 2016 and zero revenues for the first quarter of 2016. Axiom also disclosed there was "substantial doubt about the Company's ability to continue as a going concern." At all relevant times, Axiom's common stock ("AIOM") was a penny stock quoted on the OTC Link operated by OTC Markets Group, Inc. – it closed trading at $0.40 on December 17, 2015, reached a high of $2.47 on December 7 and 8, 2016, and closed at $0.905 on June 19, 2017, before the SEC suspended trading on June 20, 2017.

### V.   FACTS

**A.   The Formation of Global to Pitch Stock to Investors**

20. On or around November 23, 2015, one of the convicted fraudsters running the Funding Entity helped Lesak organize Global Research, LLC in Pennsylvania, where Lesak lived at the time. On August 18, 2016, after moving to New York, Lesak re-organized Global

Research, LLC in New York.  (Because they are the same entity registered in two different states, they will be referred to, collectively, as "Global.")

21.     Lesak identified himself as the CEO or Managing Director of Global and controlled all of its activities.  He conducted Global's business with third party vendors, supervised Global employees or independent contractors who contacted investors, and personally contacted investors on behalf of Global.

22.     Lesak identified himself as a signatory on Global bank accounts in Pennsylvania and New York, and his wife, Tara Lesak, was listed as a signatory on a third bank account in New York.

23.     On November 28, 2015, Lesak registered an internet website for Global, globalresearch1.com, and hired a digital marketing company to build and maintain Global's website and send email communications for Global to actual and prospective Axiom investors.

24.     Lesak and Global periodically provided the digital marketing company with tout sheets recommending Axiom stock that included a hyperlink to Global's website, for the digital marketing company to mass-email to actual and prospective investors under Global's name.

25.     The "About Us" section of Global's website described Global as "an Investor Relations Company.  We seek out and discover the best investment opportunities.  Ones that most investors aren't even aware of, and wouldn't know how to find.  Our research team searches through thousands of stocks and investment opportunities, then we present you with the select few we predict to be the most profitable."

26.     Global's website further claimed:  "We provide expert financial advice to both individuals and businesses.  With over 20 years of experience we'll ensure that you're always getting the best guidance from the most professional company in the industry."  The website also proclaimed: "For expert financial advice you can trust Global Research, LLC."

6

27. Global's website also contains a "blog" section where full text copies of press releases issued by Axiom are posted and available to investors visiting Global's website.

28. Global did not disclose on its website that Lesak, its CEO or Managing Director, had been barred and suspended by the NASD, nor that he had been convicted of securities fraud and wire fraud related to securities transactions.

**B.    Global's Consulting Agreements with the Funding Entity**

29. On or around December 1, 2015 – nine days before the supervised release on Lesak's prior securities and wire fraud convictions expired – Lesak and Global began calling investors to recommend Axiom stock.

30. Beginning on or about December 1, 2015, Global entered into a series of "Consulting Agreements" with the Funding Entity to conduct an investor relations campaign "disburs[ing] electronically, via email, public information and news releases about AIOM [Axiom]." The agreements further provided that Global would "discuss this information via use of the telephone to investors interested in investing in growth companies."

31. By April 2016, Lesak and Global were receiving more than $20,000 per month from the Funding Entity to promote Axiom stock.

32. One of the Consulting Agreements provided that the Funding Entity would pay Global $40,000 per month "for a 60 day Investor Relations Campaign . . . . providing [sic] a successful IR Campaign is attained," while a subsequent agreement provided that the Funding Entity would pay Global $50,000 for a 30-day campaign.

33. The Consulting Agreements required Global to "disclose with particularity" its compensation from the Funding Entity.

34.  Between December 2015 and June 2017, the Funding Entity paid Lesak and Global roughly $750,000 to promote Axiom stock. Lesak transferred some of the

funds that Global received from the Funding Entity to his personal account, and used other funds that Global received to pay personal expenses.

### C. Lesak and Global Pitched Axiom to Prospective Investors

35. To find potential Axiom investors, Lesak purchased from a third party the names and telephone numbers of prospective investors located throughout much of the United States.

36. Beginning on or around December 1, 2015, Lesak and at least two other people hired by Global made cold calls from Pennsylvania – and, at later points in time, from New York – to recommend Axiom stock to prospective investors, including at least one investor from this jurisdiction.

37. Lesak typically identified himself on pitch calls as working at Global and described Global similar to the "About Us" description on the company's website.

38. Lesak and the others at Global did not disclose to prospective investors that Lesak had been barred and had his registration suspended by the NASD, nor that he had pleaded guilty to and been convicted of both securities fraud and wire fraud related to securities transactions.

39. Lesak and Global informed a number of prospective investors that Global would not get commissions from any of the investors' Axiom purchases, and that Global would only make money if the investors subscribed to Global's stock promotion newsletter.

40. Lesak and Global did not disclose to prospective investors that they were being paid tens of thousands of dollars by the Funding Entity to recommend Axiom stock to investors.

41. After telephoning prospective investors and obtaining their email addresses, Lesak emailed tout sheets promoting Axiom stock to the digital marketing company with instructions to mass-email them to investors under Global's name and with a hyperlink to Global's website.

42.     Lesak directed the digital marketing company to send Axiom tout sheets to investors on at least sixteen instances in 2016 – March 23, March 24, April 11, April 13, April 29, May 16, May 31, June 10, June 13, June 23, July 8, July 20, August 15, September 2, November 8, and November 14 – and on January 5, 2017.

43.     Investors who purchased Axiom stock based on recommendations from Lesak and Global have informed SEC staff that they went to Global's website and reviewed its content.

44.     Lesak also sent emails directly to actual and prospective investors, and in at least one such email misspelled his name in the signature line of the email as Eric Leasack.

**D.     Investors Purchased Axiom Stock Based on Defendants' Recommendations**

45.     Lesak and Global knew from the convicted fraudster running the Funding Entity that Axiom wanted to increase its number of shareholders and the "traffic" in its stock – that is, wanted investors purchasing Axiom stock – and that developing such traffic was why Lesak and Global were being paid by the Funding Entity.

46.     From Pennsylvania and, later, New York, Lesak and others with Global called, emailed, or sent text messages to more than 100 investors around the country who purchased Axiom stock based on Lesak's and Global's recommendation to advise them not to sell their Axiom stock.

47.     Based on recommendations from Lesak and others at Global, the investors, including at least one investor who resides within this jurisdiction, purchased more than 1.9 million shares of Axiom stock at a total cost of roughly $2.8 million between December 2015 and June 2017.

48.     Shares purchased by these investors were later sold for roughly $463,000 before the SEC suspended trading and Axiom stock, leaving investors with total losses of more than $2.3 million.

49. Lesak and Global communicated with the convicted fraudster running the Funding Entity to regularly review Axiom's shareholder lists and determine which new investors bought Axiom stock based on Lesak's and Global's recommendation.

50. To enable this process, a recidivist fraudster who owned or controlled millions of shares of Axiom stock through his companies emailed the convicted fraudster running the Funding Entity a list of non-objecting beneficial owners ("NOBO") of Axiom stock.

51. Issuers – Axiom in this case – can request and obtain NOBO lists, which can include the names, addresses and share positions of shareholders as of the date of the request.

52. Axiom's NOBO list included names of investors whose purchases of Axiom stock had been solicited by Lesak and Global.

53. Axiom's NOBO list was the means by which the convicted fraudster running the Funding Entity confirmed with Lesak and Global that the investors they had solicited actually purchased Axiom stock.

54. Investors who purchased and held onto Axiom stock based on Lesak's and Global's recommendations later called or emailed Lesak to complain about the recommendation that they not sell their stock.

55. Reasonable investors would want to know, before purchasing Axiom stock based on recommendations from Lesak and Global, that Lesak and Global were being paid tens of thousands of dollars to recommend Axiom stock to investors.

56. Investors who purchased Axiom stock based on recommendations from Lesak and Global have informed SEC staff during the investigation that they were not told about the tens of thousands of dollars being paid to Lesak and Global to recommend Axiom stock, and that they would have wanted to know this before making their decision to purchase Axiom stock based on those recommendations.

57. Reasonable investors would want to know, before purchasing Axiom stock based on Lesak's and Global's recommendation, that Lesak has criminal convictions for securities fraud and wire fraud relating to securities transactions.

58. Investors who purchased or held onto Axiom stock based on recommendations from Lesak and Global have informed SEC staff during the investigation that they were never told about Lesak's criminal record and would have wanted to know this before making their decision to purchase Axiom stock based on those recommendations.

### E. Lesak Traded Axiom Stock to Create "Traffic" in Axiom Stock

59. On December 18, 2015, Lesak opened a stock trading account at Brokerage Firm A, with account number ending in 8725.

60. On February 3, 2016, Lesak opened a second stock trading account at Brokerage Firm A, with account number ending in 9155.

61. Between February 2016 and October 2016, Lesak engaged in a pattern of buying and selling relatively small amounts of Axiom stock.

62. Except for two offsetting purchases and sales of one other penny stock, Lesak only bought and sold Axiom stock.

63. Between February and July 2016, Lesak executed more than 570 purchase orders and bought more than 81,000 shares of Axiom stock through his accounts at Brokerage Firm A, for total cost of more than $105,000.

64. Between February and August 2016, Lesak executed more than 120 sales transactions and sold more than 81,000 shares of Axiom stock through his accounts at Brokerage Firm A, for total net proceeds, after accounting for commissions and fees, of approximately $101,850.

65. Between February and August 2016, Lesak's Axiom trading at Brokerage Firm A yielded net losses of approximately $3,750.

66. From February 2016 through August 2016, Axiom's share price nearly tripled, from $0.63 on February 1, 2016, to $1.76 on August 31, 2016.

67. On July 5, 2016, Brokerage Firm A informed Lesak that his Axiom trading constituted a "freeride violation," which the firm defined as opening a position (*i.e.*, purchasing securities) without sufficient funds in the account and then liquidating the position before funds are deposited into the account.

68. On July 14, 2016, Lesak opened a stock trading account at Brokerage Firm B, with account number ending in 0334.

69. On July 18 and 22, 2016, Brokerage Firm A communicated to Lesak that it had "decided to exercise its discretion" to close both of Lesak's accounts.

70. Through his new account at Brokerage Firm B, Lesak continued to engage in a pattern of purchases and sales of Axiom stock that made little economic sense.

71. Between July and October 2016, Lesak executed more than 290 purchase orders and bought more than 45,900 shares of Axiom stock through his account at Brokerage Firm B, for a total cost of more than $85,600.

72. Between August and October 2016, Lesak executed more than 25 sales transactions and sold more than 45,600 shares of Axiom stock through his account at Brokerage Firm B, for total net proceeds of roughly than $86,600.

73. Between July and October 2016, Lesak's Axiom trading at Brokerage Firm B yielded net profits of approximately $1,000.

74. In October 2016, Brokerage Firm B wrote to Lesak about manipulative trading: "On October 4th, we noticed a pattern of buy orders for AIOM [Axiom] in which the buy orders were entered at or above the market in what appears to be an attempt to uptick the price."

75. Lesak continued buying and selling Axiom stock out of his account at Brokerage Firm B through October 2016.

76. On December 22, 2016, Brokerage Firm B informed Lesak that it had decided to terminate its business relationship with him, and that Lesak's account had been "restricted to liquidating transactions only." Brokerage Firm B further informed Lesak that he should not, in the future, attempt to open a new account at the firm.

77. In May 2017, Lesak liquidated the remaining 300 shares of Axiom stock from his account at Brokerage Firm B for net proceeds of approximately $400.

78. In total, after accounting for commissions and fees, Lesak's trading in Axiom stock resulted in a net loss of roughly $2,350.

### F. Following an SEC Subpoena, Lesak and Global Revised Global's Website Disclaimer about Its Promotional Efforts and Compensation

79. On October 6, 2016, as part of its nonpublic investigation of matters that resulted in this lawsuit, the SEC served investigative subpoenas on Lesak and Global.

80. On or around October 27, 2016, Lesak instructed the digital marketing company to add the following non-specific compensation disclosure to Global's website and other investor communications: "Global Research LLC *may be* compensated by the companies mentioned on our website, for investor relations campaigns and newsletters relating to specific companies." (Emphasis added.)

81. On or around March 6, 2017, Lesak instructed the digital marketing company to revise the compensation disclosure on Global's website. Among other things, the website for the

first time disclosed that Global was being "compensated by and from the Profiled Companies we recommend . . . through [the Funding Entity]," and that the Funding Entity had paid Global $60,000 per month for an investor relations campaign for Axiom.

82. The new disclaimer on Global's website publicly admitted for the first time that Global had been and was being compensated (1) to provide only favorable information on Axiom, (2) for creating "traffic and public awareness" of Axiom, (3) and for any increase in the number of Axiom shareholders.

83. The new website disclaimer further admitted for the first time that Global was conducting its "campaign" for Axiom for a discreet time period, and that "[w]hen the Campaign ends, the price per share . . . could drop."

84. In Global's March 6, 2017 disclosure, Lesak admitted that "[s]ecurities laws, such as §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, and §17(b) of the Securities Act of 1933 require us to specifically disclose how we are compensated, as well as other information, such as that we may hold, purchase and sell the securities of a Profiled Company before, during and after we publish the Information about the Profiled Company(ies)."

VI.   CLAIMS FOR RELIEF

**CLAIM ONE**
**Material Misrepresentations and Omissions in the Purchase or Sale of Securities**
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]**
**and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)]**
**(Against Lesak and Global)**

85. Paragraphs 1-84 are re-alleged and incorporated herein by reference.

86. Section 10(b) of the Exchange Act provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange

14

or any security not so registered, or any securities-based swap agreement, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

87. Rule 10b-5(b) provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

88. By reason of the foregoing material misrepresentations and omissions, Lesak and Global violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

**CLAIM TWO**
**Deceptive and Manipulative Conduct in the Purchase or Sale of Securities**
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]**
**and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)]**
**(Against Lesak and Global)**

89. Paragraphs 1-84 are re-alleged and incorporated herein by reference.

90. Section 10(b) of the Exchange Act provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

91. Rule 10b-5 provides, in pertinent part, that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange: (a) to employ any device, scheme, or artifice to defraud, . . . and (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

92. By reason of Lesak's and Global's material misrepresentations and omissions, their coordination with the Funding Entity to create and drive "traffic" in Axiom stock, and Lesak's own manipulative trading in Axiom stock to create and drive such "traffic," Lesak violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and SEC Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

93. By reason of Lesak's and Global's material misrepresentations and omissions, and their coordination with the Funding Entity to drive "traffic" in Axiom stock, Global violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and SEC Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

### CLAIM THREE
**Deceptive and Manipulative Conduct in the Offer or Sale of Securities**
**Violations of Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) & (3)]**
**(Against Lesak)**

94. Paragraphs 1-84 are re-alleged and incorporated herein by reference.

95. Section 17(a)(1) and (3) of the Securities Act provides that it shall be unlawful for any person in the offer in the offer and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, directly or indirectly: to employ any device, scheme or artifice to defraud (Section 17(a)(1)), or to engage in transactions,

practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities (Section 17(a)(3)).

96.  By reason of the foregoing material misrepresentations and omissions, coordination with the Funding Entity to create and drive "traffic" in Axiom stock, and Lesak's own manipulative trading in Axiom stock to create and drive such "traffic," Lesak violated Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) & (3)].

## VII.  PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

- A. Finding that the Defendants committed the securities law violations alleged in this Complaint;
- B. Permanently enjoining Defendants from violating, directly or indirectly, Section 10(b) of the Exchange Act, and SEC Rule 10b-5(a)-(c);
- C. Permanently enjoining Lesak from violating, directly or indirectly, Section 17(a)(1) and (3) of the Securities Act;
- D. Prohibiting Lesak, pursuant to Section 20(g) of the Securities Act [15 U.S.C. §77t(g)(1)] and Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)], from participating in any offering of penny stocks;
- E. Ordering the Defendants to jointly and severally disgorge any and all ill-gotten gains, together with pre-judgment and post-judgment interest, derived from the securities law violations set forth in this Complaint;
- F. Imposing civil monetary penalties against each of the Defendants for each of their securities law violations, pursuant to Section 20(d) of the Securities Act [15

U.S.C. § 77t(d)] and/or Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

G. Granting such other relief as this Court may deem just or appropriate.

Date: August 21, 2018

                                           Respectfully submitted,

*/s/ Christian D. H. Schultz*
Christian D. H. Schultz (D.C. Bar # 485557)
Assistant Chief Litigation Counsel
Daniel H. Rubenstein (D.C. Bar # 415853)
Counsel
Patricia Jo
Counsel
U.S. Securities and Exchange Commission
100 F. Street, NE
Washington, DC 20549
(202) 551-4740 (Schultz)
(202) 551-4721 (Rubenstein)
(202) 551-8972 (Jo)
schultzc@sec.gov
rubensteind@sec.gov
jop@sec.gov