**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>ERIC P. LESAK,<br>GLOBAL RESEARCH, LLC (PA),<br>GLOBAL RESEARCH, LLC (NY),<br><br>    Defendants | Civil Action No. 18-1951(CKK) |

**FINAL JUDGMENT BY DEFAULT AGAINST DEFENDANTS**

The Clerk of the Court has entered a default against Defendant Eric P. Lesak, and Defendants Global Research, LLC (PA) and Global Research, LLC (NY) (collectively, "Global"). The Securities and Exchange Commission (the "SEC") has now filed a Motion for Final Judgment By Default and For Monetary Relief against Defendants, with a supporting memorandum of law and attached declarations and exhibits. The Court hereby ORDERS the following:

I.

Considering the evidence, the Court concludes that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(a), (b), and (c) promulgated thereunder [17 C.F.R. § 240.10b-5] by:

(a) employing a device, scheme, or artifice to defraud;

(b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c) engaging in an act, practice, or course of business which operates as a fraud or deceit upon persons.

The Court may grant a permanent injunction against continued violations of these provisions when "the defendant's past conduct indicates … that there is [a] reasonable likelihood of further violation(s) in the future" *S.E.C. v. Savoy Indus., Inc.*, 587 F.2d 1149, 1168 (D.C. Cir. 1978) (internal quotations omitted). In determining whether there is a reasonable likelihood of further violations, the Court considers "whether a defendant's violation was isolated or part of a pattern, whether the violation was flagrant and deliberate or merely technical in nature, and whether the defendant's business will present opportunities to violate the law in the future." *S.E.C. v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989). "The combination of the first two factors alone is sufficient to justify injunctive relief prohibiting future violations of the securities laws." *S.E.C. v. One or More Unknown Traders in the Common Stock of Certain Issuers*, 825 F. Supp. 2d 26, 34 (D.D.C. 2010).

Considering the first factor, the court finds that in this case, Defendants' violations of Section 10(b) of the Exchange Act and Rules 10b-5(a), (b), and (c) formed a pattern of misconduct over the course of seventeen months. Considering the second factor, the Court further finds that Defendants misconduct was flagrant and deliberate. Defendants promoted Axiom stock to more than one hundred investors by mispresenting that the recommendation was based on research, when in fact Defendants were secretly paid thousands of dollars to recommend the stock. Defendants failed to disclose Lesak's criminal history and disciplinary record. Additionally, Defendants engaged in manipulative efforts to create "traffic" in Axiom stock to fraudulently increase the number of shareholders and the price of the stock. Based on the strength of these two factors, the Court concludes that injunctive relief to prohibit future violations is appropriate.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) promulgated thereunder [17

C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

II.

The Court concludes that the evidence shows that Lesak violated Sections 17(a)(1) and (3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(1),(3)] by:

(a) employing a device, scheme, or artifice to defraud; and

(b) engaging in a transaction, practice, or course of business which operates as a fraud or deceit upon the purchaser.

Considering the facts discussed above, the Court concludes that Lesak engaged in a pattern of misconduct that was both flagrant and deliberate. *See First City Fin. Corp*, 890 F.2d at 1228. Based on these considerations, the Court finds that there is a likelihood sufficient to merit an

injunction that Lesak will engage in violations in the future. *Savoy Indus.*, 587 F.2d at 1168.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Lesak is permanently restrained and enjoined from violating Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (3)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud; or

    (b)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

### III.

Courts have "broad equitable power to fashion appropriate remedies for federal securities law violations." *S.E.C. v. Whittemore*, 659 F.3d 1, 9 (D.C. Cir. 2011) (internal quotations omitted). Here, the Court has decided upon disgorgement as one remedy. "Since disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property causally related to the wrongdoing." *First City Fin. Corp*, 890 F.2d at 1231. But, "disgorgement need only be a reasonable approximation of the profits causally connected to the violation." *Zacharias v. S.E.C.*, 569 F.3d 458, 472-73 (D.C. Cir. 2009). And, "the well-established principle is that the burden of uncertainty in calculating ill-gotten gains

falls on the wrongdoers who create that uncertainty." *Id.* at 473.

Here, Defendants entered into Consulting Agreements with the Funding Entity that provided for payments each month for conducting investor relations campaigns to increase the number of Axiom shareholders and "traffic" in the stock. Compl., ECF No. 1, ¶¶ 30-32, 81-83. Between December 2015 and June 2017, pursuant to the Consulting Agreements, Defendants were paid a total of $767,115 to induce investors to purchase Axiom Stock. Rubenstein Declaration; ECF No. 8-1, ¶ 11, Ex. 1, Line 81. The Court concludes that Defendants' disgorgement should be set at $767,115 because the gross proceeds that Defendants received as compensation for defrauding investors into purchasing Axiom stock is a "reasonable approximation of profits causally connected to the violation." *Whittemore*, 659 F.3d at 7 (internal quotations omitted).

Additionally, the Court concludes that Defendants should pay prejudgment interest based on the rates the Internal Revenue Service ("IRS") sets for money owed to the United States Treasury, thereby "preclude[ing] defendants from enjoying an interest-free loan on their illicitly-obtained gains." *S.E.C. v. E-Smart Techs., Inc.*, 139 F. Supp. 3d 170, 182 (D.D.C. 2015) (internal quotations omitted). Here, applying the IRS interest rates to the total amounts of payments from the Funding Entity through June 2017, based on when Defendants last received such payments, results in a prejudgment interest of $46,644.68. Rubenstein Declaration; ECF No. 8-1, ¶ 14, Ex. 2. In sum, the total disgorgement payment owed by Defendants is $813,759.68.

In addition to the court's discretion in fashioning a remedy, courts enjoy "broad discretion in subjecting the offending parties on a joint-and-severable basis to the disgorgement order." *Whittemore*, 659 F.3d at 9 (internal quotations omitted). "[J]oint-and-severable liability

is appropriate in securities cases when two or more individuals or entities collaborate *or* have []
close relationships in engaging in the illegal conduct." *Id.* at 10 (internal quotations omitted).
Given Lesak's stated role as Global's CEO or Managing Director and his control over Global's
activities-- conducting business with third party vendors, designing Global's website and its
emails to investors, supervising employees and independent contractors-- the Court concludes
that Defendants have a sufficiently close relationship to merit joint and several liability on the
disgorgement payment.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants Lesak and Global shall jointly and severally pay disgorgement of $813,759.68, including prejudgment interest of $46,644.68.

IV.

In addition to disgorgement, a court can order defendants to pay civil fines for their misconduct pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. There are three tiers of civil monetary penalties. A first-tier penalty may be imposed for any violation; a second-tier penalty if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and a third-tier penalty if the second-tier requirements are met and if the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3)(B). A court should determine the amount of a civil penalty "in light of the facts and circumstances." 15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(B)(i). In making this determination, courts often consider "(1) the egregiousness of the defendant's conduct; (2) the degree of scienter; (3) whether the conduct created substantial losses or the risk of substantial losses to other persons;

(4) whether the conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to demonstrated current and future financial condition." *S.E.C. v. Milan Grp., Inc.*, 124 F. Supp. 3d 21, 25 (D.D.C. 2015).

The Court finds that, here, Defendants violations "involved fraud, deceit, [and] manipulation," including a high degree of scienter, and involved substantial risk of loss (and actual loss) to more than one-hundred investors over seventeen months. Accordingly, the Court will grant maximum civil penalties against both Defendants. Because Defendants' violations occurred after November 3, 2015, third-tier penalties may be set at the greater of (1) $184,767 per violation for a natural person and $923,831 per violation for an entity, or (2) the gross amount of the defendant's pecuniary gain. *See* 17 C.F.R. § 201.1001 (providing inflation-adjusted amounts for maximum statutory penalties); *see also* U.S. Securities and Exchange Commission, *Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission* (Oct. 27, 2018), https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm.

In setting civil penalties, the Court notes that the statute does not define the term "violation," and the SEC did not propose a method for determining the number of violations. Some courts have considered each victim of a scheme to constitute a separate violation *See S.E.C. v. Kenton Capital Ltd.*, 69 F. Supp. 2d 1, 17 n.15 (D.D.C. 1998). Other courts have assessed only a single penalty where the violations arise from a single scheme or plan. *See S.E.C. v. Garfield Taylor, Inc.*, 134 F. Supp. 3d 107, 110-11 (D.D.C. 2015). Here, because Defendants' misconduct arose from a single scheme or plan, for purposes of this case the Court will apply a single monetary penalty. *Id.*

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants shall pay civil monetary penalties pursuant to Section 20(d) of the Securities Act of 1933 [15 U.S.C. §

77t(d)] and/or Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].  Lesak shall pay a civil monetary penalty in the amount of $184,767, and Global shall pay a civil monetary penalty in the amount of $923,831. The Court further ORDERS that any money received from Defendants go towards disgorgement before it goes towards payment of the civil fines.

V.

Under Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)(1)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)], a court can order a penny stock bar "against any person participating in, or at the time of the alleged misconduct, who was participating in, an offering of penny stock." "Penny stocks are low-priced, highly speculative stocks generally sold in the over-the-counter … market and generally not listed on an exchange." *Koch v. S.E.C.*, 177 F.3d 784, 785 n.1 (9th Cir. 1999) (internal quotation omitted). A person "participating in" penny stocks "includes any person engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of, any penny stock." 15 U.S.C. § 77t(g)(2); 15 U.S.C. § 78u(d)(6)(B). When deciding whether to impose a penny stock bar, a court considers whether the defendant is a repeat offender and the likelihood that misconduct will recur. *See E-Smart Techs.*, 139 F. Supp. 3d at 182-83.

In this case, the stock in question, Axiom, was a penny stock. Compl., ECF No. 1, ¶ 19. Defendants were compensated for providing favorable information about Axiom, creating "traffic" in its stock, and increasing the number of shareholders buying and holding Axiom. *Id.* at ¶¶ 81-82. Lesak personally opened accounts at two brokerage firms into order to trade Axiom stock to create traffic in the stock as part of a scheme to induce investors to purchase Axiom. *Id.* at ¶¶ 3, 45, 59-78, 82. Lesak's fraud spanned seventeen months and induced more

than one-hundred investors to purchase thousands of shares of Axiom and incur losses of more than $2.3 million. These violations began prior to the end of Lesak's two-year supervised release following guilty pleas and convictions for securities fraud and wire fraud.

    Given the facts of the case, the Court concludes that some duration of a penny stock bar is warranted. The S.E.C. asked for a permanent ban. But, "when the [SEC] chooses to order the most drastic remedies at its disposal, it has a greater burden to show with particularity the facts and policies that support those sanctions and why less severe action would not serve to protect investors." *Steadman v. S.E.C.*, 603 F.2d 1126, 1137 (5th Cir. 1979); *see also E-Smart Techs.*, 139 F.Supp. 3d at 182. The Court concludes that the SEC has not explained why a lifetime bar is more appropriate than a lesser sanction. Given the SEC's failure to do so, the Court will not impose the most drastic remedy, and instead decides that a temporally limited bar is sufficient on these facts. *See E-Smart Techs.*, 139 F.Supp. 3d at 182-83. Accordingly, Lesak will be barred from participating in penny stocks for twenty-five years. In setting this twenty-five-year bar, the Court considers that Lesak committed these violations while he was still on supervised release following guilty pleas and convictions for securities fraud and wire fraud.

    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Lesak is prohibited from participating in any offering of penny stock for twenty-five years, pursuant to Section 20(g) of the Securities Act [15 U.S.C. §77t(g)(1)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)].

VI.

    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

VII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: October 29, 2018

                                                                               /s/
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge

## **List of Parties to be Notified, Pursuant to LCvR 7(k)**

<u>Plaintiff</u>

Christian D. H. Schultz
Assistant Chief Litigation Counsel
Daniel Rubenstein
Counsel
Patricia Jo
Counsel
U.S. Securities and Exchange Commission
Mail Stop 5971
100 F Street, N.E.
Washington, D.C. 20549-5971
schultzc@sec.gov
rubensteinj@sec.gov
jop@sec.gov

<u>Defendants</u>

Eric P. Lesak
Global Research, LLC (PA)
Global Research, LLC (NY)
3494 Clifton Blvd
Wantagh, NY 11793